UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------- x
LANDMEN PARTNERS INC., Individually : Civil Action No. 1:08-cv-03601-CM
and On Behalf of All Others Similarly Situated, :
                                    : CLASS ACTION
            Plaintiff,              :
                                    :
    vs.                             :
                                    :
THE BLACKSTONE GROUP L.P., et al.,  :
                                    :
            Defendants.             :
----------------------------------- :
TIMOTHY McADAM, Individually and On : Civil Action No. 1:08-cv-03838-CM
Behalf of All Others Similarly Situated, :
                                    : CLASS ACTION
            Plaintiff,              :
                                    :
    vs.                             :
                                    :
THE BLACKSTONE GROUP L.P., et al.,  :
                                    :
            Defendants.             :
----------------------------------- x

[Caption continued on following page.]

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MARTIN LITWIN'S
MOTION FOR CONSOLIDATION, APPOINTMENT AS LEAD PLAINTIFF AND
APPROVAL OF SELECTION OF LEAD COUNSEL

|  |  |
|---|---|
| DAVID W. JAKEMAN, Individually and On Behalf of All Others Similarly Situated, : : : | Civil Action No. 1:08-cv-04064-CM |
| Plaintiff, : : | CLASS ACTION |
| vs. : : |  |
| THE BLACKSTONE GROUP L.P., et al., : : |  |
| Defendants. : : |  |
| DAVID B. GALCHUTT, Individually and On Behalf of All Others Similarly Situated, : : : | Civil Action No. 1:08-cv-04110-CM |
| Plaintiff, : : | CLASS ACTION |
| vs. : : |  |
| THE BLACKSTONE GROUP L.P., et al., : : |  |
| Defendants. : x |  |

**TABLE OF CONTENTS**

|       |       |                                                                                                   | Page |
|-------|-------|---------------------------------------------------------------------------------------------------|------|
| I.    |       | INTRODUCTION                                                                                      | 1    |
| II.   |       | FACTUAL BACKGROUND                                                                                | 1    |
| III.  |       | ARGUMENT                                                                                          | 4    |
|       | A.    | Mr. Litwin Is the "Most Adequate Plaintiff"                                                       | 4    |
|       |       | 1. To His Knowledge, Mr. Litwin Has the Largest Financial Interest in the Relief Sought by the Class | 5    |
|       |       | 2. Mr. Litwin Otherwise Satisfies Rule 23                                                         | 6    |
|       | B.    | The Court Should Approve Mr. Litwin's Selection of Coughlin Stoia as Lead Counsel                 | 7    |
|       | C.    | The Related Actions Should Be Consolidated                                                        | 7    |
| IV.   |       | CONCLUSION                                                                                        | 8    |

**I.      INTRODUCTION**

Martin Litwin submits this memorandum of law in support of his motion for entry of an order consolidating related actions, appointing Mr. Litwin as lead plaintiff and approving Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") as lead counsel.  Mr. Litwin is the "most adequate plaintiff," as defined by the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), because, to the best of his knowledge, he has the largest financial interest of any moving class member or plaintiff who also satisfies the requirements of Fed. R. Civ. P. 23.[1]  *See generally In re Veeco Instruments, Inc. Sec. Litig.*, 233 F.R.D. 330 (S.D.N.Y. 2005); *In re Fuwei Films Sec. Litig.*, 247 F.R.D. 432 (S.D.N.Y. 2008); *Borochoff v. Glaxosmithkline PLC*, 246 F.R.D. 201 (S.D.N.Y. 2007).

**II.     FACTUAL BACKGROUND**

The Blackstone Group L.P. ("Blackstone" or the "Company") describes itself as a leading global alternative asset manager and provider of financial advisory services and one of the largest independent alternative asset managers in the world, with assets under management of approximately $88.4 billion as of May 1, 2007.  Blackstone generates earnings through management and performance fees of its general partnership.  The Company earns management fees from its limited partners for managing money in its various funds.  Blackstone charges a management fee of 1.5% on its assets under management.  The Company also earns performance fees of 20% of the profits generated on a return on capital it invests for its limited partners.  Blackstone is also subject

---

[1]     *See* Affidavit of David A. Rosenfeld in Support of Martin Litwin's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel ("Rosenfeld Aff."), Exs. A and B.

to a "claw-back" of performance fees which requires the Company to refund to limited partners in its funds performance fees that have already been paid if the investments perform poorly.

On or about June 21, 2007, Blackstone filed with the Securities and Exchange Commission ("SEC") a Form S-1/A Registration Statement (the "Registration Statement"), for the initial public offering ("IPO"). On or about June 25, 2007, the Prospectus (the "Prospectus") with respect to the IPO, which forms part of the Registration Statement, became effective and, including the exercise of the over-allotment, more than 133 million shares of Blackstone's common units were sold to the public at $31 per unit, thereby raising more than $4 billion.

The Registration Statement and Prospectus contained untrue statements of material facts, omitted to state other facts necessary to make the statements made not misleading and was not prepared in accordance with the rules and regulations governing its preparation. Specifically, the Registration Statement failed to disclose that certain of the Company's portfolio companies were not performing well and were of declining value and, as a result, Blackstone's equity investment was impaired and the Company would not generate anticipated performance fees on those investments or would have fees "clawed-back" by limited partners in its funds.

For example, at the time of the IPO, Blackstone's investment in FGIC Corporation ("FGIC") was performing poorly. FGIC was founded in 1983 and was one of the four leading monoline financial guarantors ("monoline"). FGIC is the parent company of Financial Guaranty, its bond insurance arm. Monolines such as Financial Guaranty insure bonds that have been issued by other entities. Financial Guaranty purports to leverage its AAA financial strength rating by Moody's Investors Service, Standard & Poor's Ratings Services and Fitch Ratings to guarantee the timely repayment of bond principal and interest of an issuer in the event the issuer defaults, thus allowing

the debt issued to get the highest possible rating. Financial Guaranty's financial guarantee is designed to protect investors in the event of securities default.

Blackstone owns a 23% equity ownership interest in FGIC. The Company purchased its ownership in FGIC along with PMI Group Inc. ("PMI") and Cypress Group ("Cypress"). The consortium purchased an 88% interest in FGIC from General Electric Co. in 2003 for $1.86 billion. Traditionally, Financial Guaranty focused mainly on conservative municipal bonds. In recent years, lured by larger profits and higher growth rates, Financial Guaranty began writing insurance on collateralized debt obligations ("CDOs"), including CDOs backed by subprime mortgages to higher-risk borrowers. CDOs are a type of asset-backed security and structured credit product. CDOs repackage bonds, mortgages and other assets into new securities and then use the income from the underlying debt to pay investors. CDOs are secured or backed by a pool of bonds, loans or other assets, where investors buy slices classified by varying levels of debt or credit risk.

By the time of the IPO, the Company's investment in FGIC was materially impaired as FGIC's bond insurance arm, Financial Guaranty, had significant exposure to defaults on bonds it insured due to the plunge in value of mortgage debt. Similarly, at the time of the IPO, Blackstone's equity investment in Freescale Semiconductor was not performing well and was materially impaired. Under applicable SEC rules and regulations governing the preparation of the Registration Statement and Prospectus, the Registration Statement was required to disclose that certain of the Company's portfolio companies were not performing well and were of declining value and, as a result, Blackstone's equity investment was impaired and the Company would not generate anticipated performance fees on those investments or would have fees "clawed-back" by limited partners in its funds. The Registration Statement failed to contain any such disclosure.

In the months after the IPO, details of the problems with some of Blackstone's portfolio companies slowly began to become known to the market and the price of Blackstone stock substantially declined. On March 10, 2008, Blackstone issued a press release announcing its financial results for the full year of 2007 and the fourth quarter of 2007, the periods ending December 31, 2007. Among other things, the Company reported that it had written down its investment in FGIC by $122.9 million and that for the fourth quarter its

> Total Reportable Segment Revenues declined to $366.9 million from Total Pro Forma Adjusted Reportable Segment Revenues of $1.21 billion in the quarter ended December 31, 2006, primarily due to decreased revenues in the Corporate Private Equity and Real Estate segments. The revenue declines in the Corporate Private Equity and Real Estate segments in the fourth quarter of 2007 were mostly due to lower net appreciation of the investment portfolio as compared to the prior year, as well as a significant decrease in the value of Blackstone's portfolio investment in Financial Guaranty Insurance Company, a monoline financial guarantor.

At the time of the filing of this Motion, Blackstone common units traded in a range of $18.00 per share, approximately 45% below the IPO price of $31.00 per share.

## III.   ARGUMENT

### A.   Mr. Litwin Is the "Most Adequate Plaintiff"

The PSLRA establishes the procedure for the appointment of a lead plaintiff. 15 U.S.C. §77z(a)(1); *Veeco*, 233 F.R.D. at 331. First, the plaintiff who files the initial action must publish a notice to the class within 20 days of filing the action, informing class members of their right to file a motion for appointment as lead plaintiff. 15 U.S.C. §77z(a)(3)(A)(i). Here, notice was published on April 15, 2008, on *Business Wire* in connection with the filing of the first-filed action. *See* Rosenfeld Aff., Ex. C. Within 60 days of publishing the notice, any person who is a member of the proposed class may apply to the court to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action. 15 U.S.C. §77z(a)(3)(A)(i)(II), (B)(i).

Second, the PSLRA provides that within 90 days after publication of the notice the court shall consider any motion made by a class member and shall appoint as lead plaintiff the member of the class that the court determines to be most capable of adequately representing the interests of class members. 15 U.S.C. §77z(a)(3)(B)(i); *Veeco*, 233 F.R.D. at 331. In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person or group of persons that –
>
> (aa) has either filed the complaint or made a motion in response to a notice . . . ;
>
> (bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and
>
> (cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. §77z(a)(3)(B)(iii)(I). The presumption afforded by the PSLRA can be rebutted by demonstrating that the presumptively most adequate plaintiff is "'subject to unique defenses that render such plaintiff incapable of adequately representing the class.'"[2] *Glaxosmithkline*, 246 F.R.D. at 203 (citation omitted).

### 1. To His Knowledge, Mr. Litwin Has the Largest Financial Interest in the Relief Sought by the Class

During the Class Period, the Mr. Litwin purchased 21,000 shares of Blackstone stock and lost over $400,000 in connection therewith. *See* Rosenfeld Aff., Ex. B. To the best of his

---

[2] The time period in which class members may move to be appointed lead plaintiff in this case, under 15 U.S.C. §77z(a)(3)(A)-(B), expires June 14, 2008. Pursuant to the provisions of the PSLRA and within the requisite time frame after publication of the required notice, Mr. Litwin has timely moved this Court to be appointed lead plaintiff on behalf of all members of the class.

knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.[3]  15 U.S.C. §77z(a)(3)(B).

### 2.     Mr. Litwin Otherwise Satisfies Rule 23

In addition to possessing the largest financial interest in the outcome of the litigation, a lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §77z(a)(3)(B)(iii)(I)(cc).  Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class.  Typicality exists where the plaintiff's claims arise from the same series of events and are based on the same legal theories as the claims of all the class members. *See Rossini v. Ogilvy & Mather, Inc.*, 798 F.2d 590, 598 (2d Cir. 1986). Mr. Litwin satisfies this requirement because, just like all other class members, he: (1) purchased Blackstone securities during the Class Period; (2) purchased Blackstone securities in reliance upon the alleged materially false and misleading statements issued by defendants; and (3) suffered damages thereby. *See Fuwei*, 247 F.R.D. at 436.  Thus, Mr. Litwin's claims are typical of those of other class members since his claims and the claims of other class members arise out of the same course of events. *See In re Crayfish Co. Sec. Litig.*, 2002 U.S. Dist. LEXIS 10134, at *14 (S.D.N.Y. 2002).

Under Fed. R. Civ. P. 23(a)(4) the representative parties must also "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4) is met where: "(1) class counsel is 'qualified, experienced, and generally able to conduct the litigation;' and (2) class members do not have interests that are antagonistic to one another." *Babcock v. Computer Assocs. Int'l*, 212 F.R.D. 126, 131 (E.D.N.Y. 2003) (citation omitted).  Here, Mr. Litwin is adequate to represent the class

---

[3]    Using Mr. Litwin's actual purchase price of $36.45, as opposed to the IPO price of $31.00 for Blackstone stock, Mr. Litwin suffered a loss of nearly $300,000.

because his interests are aligned with the interests of the class because he suffered from the artificial inflation of the price of Blackstone securities and would benefit from the same relief. *See Fuwei*, 247 F.R.D. at 438-39. Furthermore, there is no evidence of antagonism between Mr. Litwin and the class as Mr. Litwin has certified to his willingness to serve as a representative of the class. Rosenfeld Aff., Ex. B.

### B. The Court Should Approve Mr. Litwin's Selection of Coughlin Stoia as Lead Counsel

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to this Court's approval. *See* 15 U.S.C. §77z(a)(3)(B)(v). This Court should not disturb the lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §77z(a)(3)(B)(iii)(II)(aa). Because Mr. Litwin has selected and retained counsel experienced in litigating securities fraud class actions with the resources to prosecute this action to the greatest recovery possible for the class, his choice of lead counsel should be approved.

Coughlin Stoia is actively engaged in complex litigation, emphasizing securities class actions. *See* Rosenfeld Aff., Ex. D. The firm possesses extensive experience litigating securities class actions and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors. *See id.* Thus, the Court may be assured that in the event this Motion is granted, the members of the class will receive the highest caliber of legal representation available from Coughlin Stoia as lead counsel. *See Glaxosmithkline*, 246 F.R.D. at 204 ("Coughlin Stoia Geller Rudman & Robbins LLP . . . is well qualified and has successfully served as lead counsel . . . in numerous complex securities class actions.").

### C. The Related Actions Should Be Consolidated

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this chapter [is] filed," the court shall not

appoint a lead plaintiff until "after the decision on the motion to consolidate is rendered." 15 U.S.C. §78u-4(a)(3)(B)(ii). To date, Mr. Litwin is aware of four related actions in this district against defendants:

| CASE NAME | CASE NO. | DATE FILED |
|---|---|---|
| *Landmen Partners Inc. v. The Blackstone Group L.P.* | 1:08-cv-03601-CM | 4/15/08 |
| *McAdam v. The Blackstone Group L.P.* | 1:08-cv-03838-CM | 4/23/08 |
| *Jakeman v. The Blackstone Group L.P.* | 1:08-cv-04064-CM | 4/30/08 |
| *Galchutt v. The Blackstone Group L.P.* | 1:08-cv-04110-CM | 5/1/08© |

Under Rule 42(a) of the Federal Rules of Civil Procedure, consolidation is appropriate when the actions involve common questions of law or fact. Consolidation is particularly appropriate in securities class action litigations such as this. *See id.* All of the actions relate to the same series of false and misleading statements and arise under the Securities Act of 1933. Therefore, consolidation is appropriate. *See Johnson v. Celotex Corp.*, 899 F.2d 1281, 1285 (2d Cir. 1990).

## IV.    CONCLUSION

For all the foregoing reasons, Mr. Litwin respectfully requests that the Court consolidate the related actions, appoint him as Lead Plaintiff and approve his selection of Coughlin Stoia as Lead Counsel.

DATED: June 16, 2008                    Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA, JR.

                    s/ David A. Rosenfeld
                    DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

- 8 -

        COUGHLIN STOIA GELLER
          RUDMAN & ROBBINS LLP
        RAMZI ABADOU
        655 West Broadway, Suite 1900
        San Diego, CA  92101
        Telephone:  619/231-1058
        619/231-7423 (fax)

        [Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Blackstone Group\BRF00052031-LP.doc

CERTIFICATE OF SERVICE

I hereby certify that on June 16, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 16, 2008.

s/ David A. Rosenfeld
DAVID A. ROSENFELD

COUGHLIN STOIA GELLER
   RUDMAN & ROBBINS LLP
58 South Service Road, Suite 200
Melville, NY 11747
Telephone: 631/367-7100
631/367-1173 (fax)

E-mail: drosenfeld@csgrr.com

# Mailing Information for a Case 1:08-cv-03601-CM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Bruce Domenick Angiolillo**
  bangiolillo@stblaw.com,managingclerk@stblaw.com

- **Jack Gerald Fruchter**
  JFruchter@FruchterTwersky.com

- **David Avi Rosenfeld**
  drosenfeld@csgrr.com,e_file_ny@csgrr.com,amartin@csgrr.com

- **Samuel Howard Rudman**
  srudman@csgrr.com,e_file_ny@csgrr.com

- **Jonathan K. Youngwood**
  jyoungwood@stblaw.com,managingclerk@stblaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)