UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------- x
LANDMEN PARTNERS INC., Individually : Civil Action No. 1:08-cv-03601-CM
and On Behalf of All Others Similarly Situated, :
: <u>CLASS ACTION</u>
Plaintiff, :
:
vs. :
:
THE BLACKSTONE GROUP L.P., et al., :
:
Defendants. :
---------------------------------------- :
TIMOTHY McADAM, Individually and On : Civil Action No. 1:08-cv-03838-CM
Behalf of All Others Similarly Situated, :
: <u>CLASS ACTION</u>
Plaintiff, :
:
vs. :
:
THE BLACKSTONE GROUP L.P., et al., :
:
Defendants. :
---------------------------------------- x

[Caption continued on following page.]

MARTIN LITWIN'S OPPOSITION TO THE "BX INVESTOR GROUP'S"
MOTION FOR APPOINTMENT AS LEAD PLAINTIFF

|  |  |
|---|---|
| DAVID W. JAKEMAN, Individually and On Behalf of All Others Similarly Situated, | : Civil Action No. 1:08-cv-04064-CM |
| Plaintiff, | : <u>CLASS ACTION</u> |
| vs. | : |
| THE BLACKSTONE GROUP L.P., et al., | : |
| Defendants. | : |
| DAVID B. GALCHUTT, Individually and On Behalf of All Others Similarly Situated, | : Civil Action No. 1:08-cv-04110-CM |
| Plaintiff, | : <u>CLASS ACTION</u> |
| vs. | : |
| THE BLACKSTONE GROUP L.P., et al., | : |
| Defendants. | : |

**TABLE OF CONTENTS**

**Page**

I.    ARGUMENT ..................................................................................................................1

    A.    Martin Litwin Is the "Most Adequate" Plaintiff .......................................................1

    B.    The BX Investor Group is Not the "Most Adequate Plaintiff" ...............................2

        1.    The Manner in Which the Members of the BX Investor Group Were Recruited and Forged Is Contrary to the Intent of Congress in Enacting the PSLRA ..................................................................................2

        2.    The BX Investor Group Is an Improper Group ............................................5

        3.    BX Investor Group Member Max Poulter's Trading Pattern is Atypical ..........................................................................................................7

II.    CONCLUSION .............................................................................................................10

## TABLE OF AUTHORITIES

Page

**CASES**

*Aronson v. McKesson HBOC, Inc.*,
    79 F. Supp. 2d 1146 (N.D. Cal. 1999) ...................................................................................6

*Bhojwani v. Pistiolis*,
    2007 U.S. Dist. LEXIS 96246 (S.D.N.Y. 2007) ..............................................................2, 5

*Goldberger v. PXRE Group, Ltd.*,
    2007 U.S. Dist. LEXIS 23925 (S.D.N.Y. 2007) .................................................................5

*In re Bank One S'holders Class Actions*,
    96 F. Supp. 2d 780 (N.D. Ill. 2000) ..................................................................................8, 9

*In re Cable & Wireless, PLC, Sec. Litig.*,
    217 F.R.D. 372 (E.D. Va. 2003) ..........................................................................................1

*In re Cardinal Health, Inc. Sec. Litig.*,
    226 F.R.D. 298 (S.D. Ohio 2005) ........................................................................................8

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001) .................................................................................................7

*In re Flag Telecom Holdings, Ltd. Sec. Litig.*,
    411 F. Supp. 2d 377 (S.D.N.Y. 2006) ..................................................................................9

*In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*,
    209 F.R.D. 447 (C.D. Cal. 2002) .........................................................................................6

*In re MicroStrategy Inc. Sec. Litig.*,
    110 F. Supp. 2d 427 (E.D. Va. 1999) (Ellis, J.) ..........................................................7, 8, 9

*In re Network Assocs. Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) .............................................................................4, 7

*In re Oxford Health Plans, Inc. Sec. Litig.*,
    182 F.R.D. 42 (S.D.N.Y. 1998) ...........................................................................................4

*In re Safeguard Scientifics*,
    216 F.R.D. 577 (E.D. Pa. 2003) .......................................................................................8, 9

*In re Tarragon Corp. Sec. Litig.*,
    2007 U.S. Dist. LEXIS 91418 (S.D.N.Y. 2007) ..................................................................5

Page

*In re Vaxgen Sec. Litig.*,
    2004 U.S. Dist. LEXIS 29812 (N.D. Cal. 2004) ...............................................................6

*In re Veeco Instruments, Inc.*,
    233 F.R.D. 330 (S.D.N.Y. 2005) ..............................................................................1, 2, 8

*Levine v. AtriCure, Inc.*,
    508 F. Supp. 2d 268 (S.D.N.Y. 2007)................................................................................8

*Mayo v. Apropos Tech., Inc.*,
    2002 U.S. Dist. LEXIS 1924 (N.D. Ill. 2002) ....................................................................4

*Ross v. Abercrombie & Fitch Co.*,
    2007 U.S. Dist. LEXIS 24903 (S.D. Ohio 2007)................................................................6

*Ruland v. Infosonics Corp.*,
    2006 U.S. Dist. LEXIS 79144 (S.D. Cal. 2006) .................................................................5

*Schriver v. Impac Mortgage Holdings, Inc.*,
    2006 U.S. Dist. LEXIS 40607 (C.D. Cal. 2006).................................................................6

*Stengle v. Am. Italian Pasta Co.*,
    2005 U.S. Dist. LEXIS 43816 (W.D. Mo. 2005).................................................................2

*Switzenbaum v. Orbital Scis. Corp.*,
    187 F.R.D. 246 (E.D. Va. 1999) ........................................................................................6

*Tsirekidze v. Syntax-Brillian Corp.*,
    No. CV-07-2204-PHX-FJM (D. Ariz. Apr. 4, 2008)..........................................................4

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
    §77k..................................................................................................................................8, 9
    §77z-1(a)(3)(A)....................................................................................................................3
    §77z-1(a)(3)(A)(i) ................................................................................................................3
    §77z-1(a)(3)(B)....................................................................................................................7

Federal Rules of Civil Rules
    Rule 23 ............................................................................................................................1, 7

**Page**

**SECONDARY AUTHORITIES**

*Testimony of Arthur Levitt, Chairman of the U.S. Securities and Exchange Commission, Before the Senate Permanent Subcommittee on Investigations Committee on Governmental Affairs, Concerning Day Trading* (Sept. 16, 1999) ..........................9

I.  ARGUMENT

   A.  Martin Litwin Is the "Most Adequate" Plaintiff

Two motions for appointment as lead plaintiff are pending before the Court. On June 20, 2008, the "Jakeman Group" – a third applicant – withdrew its motion. *See* Affidavit of David Rosenfeld in Support of Martin Litwin's Opposition to the "BX Investor Group's" Motion for Appointment as Lead Plaintiff ("Rosenfeld Aff."), Ex. 1. Of the two remaining motions, Mr. Litwin's motion should be granted. Mr. Litwin has the largest financial interest of any single individual applicant that also satisfies the requirements of Fed. R. Civ. P. 23. *See* Memorandum of Point and Authorities in Support of Martin Litwin's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel at 4-8; *In re Cable & Wireless, PLC, Sec. Litig.*, 217 F.R.D. 372, 377 (E.D. Va. 2003) ("[A] movant's financial interest is just a beginning point, and courts acknowledge that they must also consider the movant's ability and willingness to adequately represent the class.").

Mr. Litwin: (i) purchased 21,000 shares of The Blackstone Group L.P. ("Blackstone" or the "Company") stock; (ii) at a cost of over $651,000; (iii) held all 21,000 shares through the Company's March 10, 2008 negative revelation; and (iv) lost $287,070 in connection therewith. *See In re Veeco Instruments, Inc.*, 233 F.R.D. 330, 332 (S.D.N.Y. 2005) (employing "four-prong standard"); Rosenfeld Aff., Ex. 2. The foregoing four-part financial interest analysis is based on the Company's IPO price of $31.00 per share. Using Mr. Litwin's actual purchase prices, his losses increase to $401,000 and his net expenditures increase to $765,450. *See* Rosenfeld Aff., Ex. 2. His gross and net shares purchased remain constant at 21,000 shares.

Mr. Litwin is a loan officer from Newbury Park, California, has a B.A. in Business Administration and has been active in the stock market for many years. After the June 18, 2008, status conference before Your Honor, counsel advised Mr. Litwin of the expedited nature of these

proceedings and, after being so advised, Mr. Litwin confirmed his desire to lead this case on behalf the putative class and to make himself available should the Court so require.

In addition to Mr. Litwin's motion, a lead plaintiff motion was also filed by "one of those 'amalgamated' groups of unrelated persons who band together in the hope of thereby becoming the biggest loser for PSLRA purposes." *Veeco*, 233 F.R.D. at 334; *Bhojwani v. Pistiolis*, 2007 U.S. Dist. LEXIS 96246, at *11-*12 (S.D.N.Y. 2007) (McMahon, J.) ("*Top Tankers*").[1]  The self-styled "BX Investor Group" is comprised of two such persons – (i) Francis Brady; and (ii) Max Poulter. *See id.*; *Stengle v. Am. Italian Pasta Co.*, 2005 U.S. Dist. LEXIS 43816, at *14 (W.D. Mo. 2005) ("this [BX Investor Group] title appears to have been adopted solely for purposes of this litigation").

### B. The BX Investor Group is Not the "Most Adequate Plaintiff"

#### 1. The Manner in Which the Members of the BX Investor Group Were Recruited and Forged Is Contrary to the Intent of Congress in Enacting the PSLRA

In addition to being a group of the sort this Court has previously viewed with "disapproval," the manner in which the BX Investor Group was forged should give the Court added concern. *Veeco*, 233 F.R.D. at 334.  On June 9, 2008, the BX Investor Group's counsel – a two-person law firm called Brower Piven – filed a press release soliciting clients with the following heading:

> **Brower Piven Encourages Investors Who Have Losses in Excess of $200,000 From Investment in The Blackstone Group L.P. to Inquire about the Lead Plaintiff Position in Securities Fraud Class Action Lawsuit Before the June 16, 2008 Lead Plaintiff Deadline**

Rosenfeld Aff., Ex. 3.  Despite the fact that it never even filed a complaint of its own on behalf of the putative class, this was the second such press release filed by the Brower Piven firm in connection with this case. Rosenfeld Aff., Ex. 4.  The notice ends with the following language:

---

[1]  Unless otherwise noted all emphasis is added and citations are omitted.

> If you have a net loss in excess of $200,000 incurred from transactions in Blackstone common units during the Class Period and are interested in directing the course of this litigation for plaintiffs, ***please contact Brower Piven*** . . . [Y]ou may obtain additional information about this lawsuit and your ability to become a lead plaintiff ***by contacting Brower Piven*** . . . .

Such recruiting of individuals for the lead plaintiff role by a law firm that did not itself file a complaint was not the intended purpose of the PSLRA's notice provision.[2]  15 U.S.C. §77z-1(a)(3)(A).  Indeed, other jurisdictions have adopted local rules specifically to address such "fishing" wires by law firms seeking a lead counsel role in PSLRA cases:

> The court finds that certain practices in Reform Act class actions have the potential to harm the interests of class members and/or defendants and can interfere with the orderly administration of justice.  For example, the court finds that ***numerous notices*** of the same litigation have been released, thereby creating the potential for confusion for potential class members and ***potential damage to the interests of shareholders and businesses***.  The court finds further that the measures adopted herein are reasonably necessary to protect the interests of class members, realize the goals of the Reform Act, and balance the rights of those who wish to prosecute a Reform Act class action or communicate about it. . . .

> Consistent with the provisions of 15 U.S.C. §§ 78u-4(a)(3)(A)(i), 77z-1(a)(3)(A)(i), following the filing of any Reform Act class action in this District, each law firm ***on a complaint*** may choose to publish a notice. . . .

> Unless otherwise ordered by the court, there shall be ***only one notice per law firm*** regardless of the number of complaints filed in this Court arising out of the same or similar set of facts or circumstances.  No attorney seeking to represent the putative class shall initiate any other communication with putative class members unless approved in advance by the court.  Such court approval will be granted if the

---

[2]    Coughlin Stoia Geller Rudman & Robbins LLP ("Coughlin Stoia") filed the first complaint (*Landmen Partners Inc. v. The Blackstone Group L.P.*, Civil Action No. 1:08-cv-03601-CM (S.D.N.Y. April 15, 2008)) and issued the first-filed notice as mandated by the PSLRA.  15 U.S.C. §77z-1(a)(3)(A)(i).  Unlike Brower Piven's press release, the first-filed notice provides substantial information about the case and advises that "[a]ny member of the purported class may move the Court to serve as lead plaintiff ***through counsel of their choice***, ***or may choose to do nothing and remain an absent class member***."  Affidavit of David A. Rosenfeld in Support of Martin Litwin's Motion for Consolidation, Appointment as Lead Plaintiff and Approval of Selection of Lead Counsel, Ex. C.

- 3 -

communication is deemed by this Court to be reasonably necessary to achieve the purposes of the Reform Act. . . .

LR 23.1C(4) & (a)(i), NDGa. (Rosenfeld Aff., Ex. 5).  Brower Piven's solicitous press releases undermine, rather than achieve, the purposes of the PSLRA.  When attorneys use misleading press releases – masquerading as "notices" – based on other firm's work product to solicit clients, the PSLRA's primary purpose of replacing lawyer-driven litigation with client-driven litigation is subverted.[3]  Recently, in *Syntax-Brillian*, the court rejected the motion of a group of individuals forged by such a "press release," reasoning:

> Even if the Farrukh Group had established itself as presumptive lead plaintiff, there is rebuttal evidence.  Competing movant Syntax Investor Group has brought to our attention a "press release" issued by the Farrukh Group's counsel . . . which "urges" Syntax investors to sign up with the firm. . . .  Without determining the ethical implications of counsel's patent effort to solicit clients, we conclude that the Farrukh Group's formation ***runs directly contrary to the goals of the PSLRA*** – to reduce lawyer-driven litigation.  The Farrukh Group will not be appointed lead plaintiff.

*Tsirekidze v. Syntax-Brillian Corp.*, No. CV-07-2204-PHX-FJM, slip op. at 7-8 (D. Ariz. Apr. 4, 2008) (Rosenfeld Aff., Ex. 6); *see In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 45 (S.D.N.Y. 1998) ("The PSLRA calls for greater supervision by the Court in the selection of which plaintiffs will control the litigation.").

Misleading solicitations can also be detrimental to the interests of the putative class.  *See In re Network Assocs. Sec. Litig.*, 76 F. Supp. 2d 1017, 1032 (N.D. Cal. 1999) ("recipients [of notices] could easily have thought that they needed to sign up to participate at all").  The Court should not put this case in the hands of individuals who did not know each other prior to this litigation and who

---

[3] When a lead plaintiff proposes as lead counsel attorneys who have not previously filed their own complaints, courts have declined to approve their selection without an additional showing of their adequacy.  *See generally Mayo v. Apropos Tech., Inc.*, 2002 U.S. Dist. LEXIS 1924 (N.D. Ill. 2002).

responded affirmatively to a misleading solicitation campaign by a law firm that had not even filed a case. These releases do not benefit anyone other than the lawyers issuing them and therefore undermine the *bona fide* efforts by other counsel and plaintiffs to investigate and pursue meritorious securities cases.[4]

### 2. The BX Investor Group Is an Improper Group

"Appointment of lead counsel should not depend on which law firm can accumulate the most class members." *Ruland v. Infosonics Corp.*, 2006 U.S. Dist. LEXIS 79144, at *10 (S.D. Cal. 2006). "'To allow lawyers to designate unrelated plaintiffs as a "group" and aggregate their financial stakes would allow and encourage lawyers to direct the litigation. Congress hoped that the lead plaintiff would seek the lawyers, rather than having the lawyers seek the lead plaintiff. . . .'" *In re Tarragon Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 91418, at *4 (S.D.N.Y. 2007); *Goldberger v. PXRE Group, Ltd.*, 2007 U.S. Dist. LEXIS 23925, at *14 (S.D.N.Y. 2007). Like the group of individuals this Court looked upon with disfavor in *Top Tankers*, the members of the BX Investor Group have not explained "how these two disparate [individuals] agreed to work together to prosecute this lawsuit." *Top Tankers*, 2007 U.S. Dist. LEXIS 96246, at *11. Indeed, just the contrary appears to be this case.

Counsel for the purportedly "small, cohesive" BX Investor Group has ***already*** invited the Court to "consider their losses individually and appoint either of them, individually, ***should the Court so desire***."[5] *Compare* BX Investor Group Mem. at 1, 8 *with id.* at *10 (chastising counsel for

---

[4] The Brower Piven law firm's press releases may also run afoul of the New York Code of Professional Responsibility as they were not labeled as "Attorney Advertising." *See* DR 2-101[F] (requiring law firm advertisements to be labeled "Attorney Advertising").

[5] Memorandum in Support of the Motion of the BX Investor Group to Consolidate Related Actions; to be Appointed Lead Plaintiff; and to Approve Proposed Lead Plaintiff's Choice of Counsel at 1 n.1.

its "small, cohesive . . . group" "mantra"). Counsel's effort to dissolve the BX Investor Group without its members' consent or knowledge speaks volumes.

In *Schriver v. Impac Mortgage Holdings, Inc.*, 2006 U.S. Dist. LEXIS 40607 (C.D. Cal. 2006), counsel for a group similarly asked the court to consider the group or its individual members separately. *Id*. at *28-*29. While the court "appreciate[d] [their] flexibility, [he] decline[d] to follow [their] suggestion." *Id*. This Court should too. Similarly, in *Switzenbaum v. Orbital Scis. Corp.*, 187 F.R.D. 246 (E.D. Va. 1999), the court held that a group that "attempted to bootstrap members in and out of its leadership by . . . appearing to cut [certain members] . . . by inviting the Court to select a reconstituted group of managers instead," could not "credibly claim to offer adequate representation to others" due to its "degree of disorder." *Id*. at 250-51. In rejecting counsel's creativity, the court properly refused to consider each variation of the group created by the group's lawyers and found that counsel's manipulation tainted every member of the group and thus determined that any makeup of the group would be inadequate to represent the class. *Id*. Other courts are in accord. *See Ross v. Abercrombie & Fitch Co.*, 2007 U.S. Dist. LEXIS 24903, at *13 (S.D. Ohio 2007); *In re Vaxgen Sec. Litig.*, 2004 U.S. Dist. LEXIS 29812 (N.D. Cal. 2004); *In re Gemstar-TV Guide Int'l, Inc. Sec. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002).

The declarations submitted by counsel for the BX Investor Group's members do not alter this analyses. First, the BX Investor Group's declarations say nothing about being proffered separately. Second, the verbatim declarations were obviously penned by counsel. Third, and most critically, the declarations fail to answer the question courts deem most critical in appointing groups of individual investors – namely, "**why its members combined into [a] group[] in the first place**." *Impac*, 2006 U.S. Dist. LEXIS 40607, at *25-*27; *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1154 (N.D. Cal. 1999) (requiring "that the members of the group themselves initiated the representation,

*rather than the other way around*"); *Network Assocs.*, 76 F. Supp. 2d at 1052 (a group must "explain and justify its composition and structure *to the court's satisfaction*"); *In re MicroStrategy Inc. Sec. Litig.*, 110 F. Supp. 2d 427, 437 (E.D. Va. 1999) (Ellis, J.) (noting that the "group failed to present evidence *with respect to its formation*").

### 3. BX Investor Group Member Max Poulter's Trading Pattern is Atypical

Drawing on the PSLRA's overall scheme and purpose, in *In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001), the Third Circuit reasoned that while groups are clearly contemplated by the PSLRA:

> If . . . a court were to determine that the movant "group" with the largest losses had been created by the efforts of lawyers hoping to ensure their eventual appointment as lead counsel, *it could well conclude . . . that the members of that "group"* could not be counted on to monitor counsel in a sufficient manner.

*Id*. at 267. Here, given how the BX Investor Group was forged, there is little doubt that the two members of the group cannot "be counted on to monitor counsel in a sufficient manner." *Id*. Nevertheless, should the Court consider Mr. Poulter's candidacy separately, he still should not be appointed.

Unlike typical investors, Mr. Poulter bought and sold large volumes of Blackstone shares daily, seeking profits of pennies a share on the normal price fluctuations that occur in every stock. As such, defendants will argue that Mr. Poulter cannot satisfy Rule 23 and is otherwise subject to unique defenses. 15 U.S.C. §77z-1(a)(3)(B). As the court explained in *MicroStrategy*:

> [E]ven assuming Wolverine Trading's evidence of loss was sufficient, its application did not satisfy the statutory requirements of typicality and adequacy . . . . Evidence presented . . . confirmed that Wolverine Trading was an atypical investor that engages in transactions far beyond the scope of what a typical investor contemplates. . . . Accordingly, Wolverine Trading may [be] subject to unique defenses based on its method of doing business. For these reasons, Wolverine Trading [is] not an adequate class representative.

110 F. Supp. 2d at 436-37 (footnote omitted); *In re Cardinal Health, Inc. Sec. Litig.*, 226 F.R.D. 298, 311 (S.D. Ohio 2005) (same).

Based on the voluminous trading data Mr. Poulter supplied in connection with his lead plaintiff motion, he appears to be an atypical high-volume, day-trader of the sort that courts routinely refuse to appoint as lead plaintiffs. *See In re Safeguard Scientifics*, 216 F.R.D. 577, 582-83 (E.D. Pa. 2003); *MicroStrategy*, 110 F. Supp. 2d at 434-35; *In re Bank One S'holders Class Actions*, 96 F. Supp. 2d 780, 784 (N.D. Ill. 2000). For instance, Mr. Poulter bought and sold exactly 130,213 shares of Blackstone stock during the relevant period, and the manner in which he purchased and sold those shares is far beyond the scope of what a typical investor contemplates:

- Poulter purchased Blackstone stock 48 ***separate*** times on the ***same day*** on September 14, 2007, for prices ranging from only $23.39 to $23.74 (*i.e.*, a difference of only 35 cents);

- Poulter purchased Blackstone stock 106 ***separate*** times on September 17, 2007, in lots ranging from 13,200 shares to 1 share in prices ranging from only $24.14 to $24.30 (*i.e.*, a difference of only 16 cents);

- On November 1, 2007, Mr. Poulter sold Blackstone stock 189 ***separate*** times at prices ranging from $24.80 to $24.91 (*i.e.*, a difference of only 11 cents). The next day, on November 2, 2007, Mr. Poulter bought 35,350 of those shares back at $24.17.

- At certain times on September 17 and November 1, 2007, Mr. Poulter bought only ***1 share***. At other times on those same days, he purchased as many as 13,200 and 5,650 shares, respectively.

Mr. Poulter's unique trading patterns persist until Mr. Poulter's last transaction on March 19, 2008 – leaving him holding not a single share of Blackstone stock. *See, e.g.*, *Veeco*, 233 F.R.D. at 332.[6] If appointed, defendants will have a field day with Mr. Poulter. First, defendants will argue

---

[6] Plaintiffs need not prove loss causation under §11. Negative causation is an affirmative defense, however, that will be strengthened were Mr. Poulter appointed as lead plaintiff. *See Levine v. AtriCure, Inc.*, 508 F. Supp. 2d 268, 272-74 (S.D.N.Y. 2007).

that Mr. Poulter did not invest in Blackstone stock in any true sense of the word because, according to the Securities and Exchange Commission, "[d]ay traders do not 'invest,'" instead: "[t]hrough the use of sophisticated computer software, day traders sit in front of computer screens and look for nothing more than real time price movements. What it is that they are buying or selling is of no concern to them."[7] *Bank One*, 96 F. Supp. 2d at 784 (refusing to appoint as lead plaintiff an entity that "**engaged in extensive daytrading**"); *MicroStrategy*, 110 F. Supp. 2d at 436-37 (same).

Moreover, if appointed, defendants will later persuasively argue that, as a "day-trader," Mr. Poulter is "atypical and not an adequate representative because he is subject to unique defenses regarding . . . **materiality**." *Safeguard*, 216 F.R.D. at 582-83. Materiality, of course, is a key element of plaintiffs' *prima facie* claim under §11 of the Securities Act of 1933. *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 411 F. Supp. 2d 377, 382 (S.D.N.Y. 2006). Mr. Poulter's motion should be denied.

---

[7] *See* Rosenfeld Aff., Ex. 7 (*Day Trading: Your Dollars at Risk*, available at http://www.sec.gov/investor/pubs/daytips.htm; *Testimony of Arthur Levitt, Chairman of the U.S. Securities and Exchange Commission, Before the Senate Permanent Subcommittee on Investigations Committee on Governmental Affairs, Concerning Day Trading* (Sept. 16, 1999), available at http://www.sec.gov/news/testimony/testarchive/1999/tsty2099.htm; and *Day Trading*, available at http://www.sec.gov/answers/daytrading.htm).

## II.     CONCLUSION

For the foregoing reasons, Mr. Litwin should be appointed as lead plaintiff and his selection of Coughlin Stoia as lead counsel should be approved. The BX Investor Group's Motion should be denied.

DATED:  June 20, 2008                              Respectfully submitted,

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
MARIO ALBA, JR.


                                      s/ David A. Rosenfeld
                                    DAVID A. ROSENFELD

58 South Service Road, Suite 200
Melville, NY 11747
Telephone:  631/367-7100
631/367-1173 (fax)

COUGHLIN STOIA GELLER
  RUDMAN & ROBBINS LLP
RAMZI ABADOU
655 West Broadway, Suite 1900
San Diego, CA  92101
Telephone:  619/231-1058
619/231-7423 (fax)

[Proposed] Lead Counsel for Plaintiffs

S:\CasesSD\Blackstone Group\BRF00052131-LP OPP.doc

CERTIFICATE OF SERVICE

I hereby certify that on June 20, 2008, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the e-mail addresses denoted on the attached Electronic Mail Notice List, and I hereby certify that I have mailed the foregoing document or paper via the United States Postal Service to the non-CM/ECF participants indicated on the attached Manual Notice List.

I certify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on June 20, 2008.

        s/ David A. Rosenfeld
        DAVID A. ROSENFELD

        COUGHLIN STOIA GELLER
          RUDMAN & ROBBINS LLP
        58 South Service Road, Suite 200
        Melville, NY  11747
        Telephone:  631/367-7100
        631/367-1173 (fax)

        E-mail:  drosenfeld@csgrr.com

# Mailing Information for a Case 1:08-cv-03601-CM

## Electronic Mail Notice List

The following are those who are currently on the list to receive e-mail notices for this case.

- **Bruce Domenick Angiolillo**
  bangiolillo@stblaw.com,managingclerk@stblaw.com

- **David A.P. Brower**
  brower@browerpiven.com

- **Jason Robert D'Agnenica**
  jasondag@ssbny.com

- **Jack Gerald Fruchter**
  JFruchter@FruchterTwersky.com

- **David Avi Rosenfeld**
  drosenfeld@csgrr.com,e_file_ny@csgrr.com,amartin@csgrr.com

- **Samuel Howard Rudman**
  srudman@csgrr.com,e_file_ny@csgrr.com

- **Jonathan K. Youngwood**
  jyoungwood@stblaw.com,managingclerk@stblaw.com

## Manual Notice List

The following is the list of attorneys who are **not** on the list to receive e-mail notices for this case (who therefore require manual noticing). You may wish to use your mouse to select and copy this list into your word processing program in order to create notices or labels for these recipients.

- (No manual recipients)