UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LANDMEN PARTNERS INC., Individually And On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>vs.<br><br>THE BLACKSTONE GROUP L.P., STEPHEN A. SCHWARZMAN and MICHAEL A. PUGLISI,<br><br>      Defendants. | Civil Action No. 08-CV-03601 - CM |
| TIMOTHY McADAM, Individually And On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>vs.<br><br>THE BLACKSTONE GROUP L.P., STEPHEN A. SCHWARZMAN and MICHAEL A. PUGLISI,<br><br>      Defendants.<br><br>[*caption continued on next page*] | Civil Action No. 08-CV-03838 - CM |

**NOTICE OF SERVICE OF THE BX INVESTOR GROUP'S RESPONSE
TO COMPETING LEAD PLAINTIFF MOTIONS**

| | |
|---|---|
| DAVID B. GALCHUTT, Individually And On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>vs.<br><br>THE BLACKSTONE GROUP L.P., STEPHEN A. SCHWARZMAN and MICHAEL A. PUGLISI,<br><br>       Defendants. | Civil Action No. 08-CV-04110 - CM |
| DAVID W. JAKEMAN, Individually And On Behalf of All Others Similarly Situated,<br><br>       Plaintiff,<br><br>vs.<br><br>THE BLACKSTONE GROUP L.P., STEPHEN A. SCHWARZMAN and MICHAEL A. PUGLISI,<br><br>       Defendants. | Civil Action No. 08-CV-04064 - CM |

**PLEASE TAKE NOTICE** that on June 20, 2008, proposed lead plaintiff, BX Investor Group, served, via email, all counsel of record with a copy of BX Investor Group's letter in response to competing lead plaintiff motions submitted, via facsimile, to The Honorable Colleen McMahon in accordance with the Court's instructions and individual practice rules. A copy of the email confirming delivery to all counsel of record, together with a copy of the letter sent to Judge McMahon and the facsimile confirmation-of-delivery receipt, is attached hereto as Exhibit A.

Dated: June 26, 2008

Respectfully submitted,

**BROWER PIVEN**
 A Professional Corporation

 /s/  David A.P. Brower
David A.P. Brower
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

**BROWER PIVEN**
A Professional Corporation
Charles J. Piven
World Trade Center-Baltimore
401 East Pratt Street, Suite 2525
Baltimore, Maryland 21202
Telephone: (410) 332-0030
Facsimile: (410) 685-1300

*Counsel for the BX Investor Group and Proposed Lead Counsel for the Class*

# EXHIBIT A

**From:** Eric Love
**Sent:** Friday, June 20, 2008 5:13 PM
**To:** 'bangiolillo@stblaw.com'; 'JFruchter@FruchterTwersky.com'; 'drosenfeld@csgrr.com'; 'srudman@csgrr.com'; 'jyoungwood@stblaw.com'; 'ssbny@aol.com'; 'jweiss@weisslurie.com'; 'tciarlone@lawssb.com'; 'rstone@lawssb.com'; 'jasondag@ssbny.com'; David A.P. Brower
**Subject:** Landmen Partners, Inc., et al. v. The Blackstone Group, L.P., et al., 1:08-cv-03601

Dear Counsel,

    Please find attached a copy of a letter sent by facsimile to the Honorable Colleen McMahon today, June 20, 2008.

Sincerely,

**Eric C. Love**
**Legal Assistant**
*Brower Piven,*
*A Professional Corporation*
488 Madison Avenue
Eighth Floor
New York, New York 10022
Telephone: (212) 501-9000
Facsimile: (212) 501-0300

*The information contained in this email communication may contain confidential and/or privileged material, including information protected by the attorney-client and/or attorney's work product privileges. It is intended only for the person(s) or entity(ies) to which it is addressed. Receipt of this communication by any person(s) or entity(ies) other than those to whom it is addressed is unintended and does not constitute a waiver of any of the applicable privileges. If you are not an intended recipient, you are hereby notified that any review, retransmission, dissemination or other unauthorized use of, or the taking of any action in reliance upon, the information in this email (including any attachments) by any person(s) or entity(ies) other than the intended recipient is prohibited. If you have received this email in error, please contact the sender and delete the material from any computer on which it was received in error.*

*Tax Advice Disclosure: To ensure compliance with requirements imposed by the IRS under Circular 230, we inform you that any U.S. federal tax advice contained in this communication (including any attachments), unless otherwise specifically stated, is not intended or written to be used, and cannot be used, for the purpose of (1) avoiding penalties under the Internal Revenue Code or (2) promoting, marketing or recommending to another party any matters addressed herein.*

```
                                          TX Report                                    P   1
                                                                         06/20/2008  15:47
                                                                         Serial No.  57BE06929
                                                                              TC:    215051
```

| Destination | Start Time | Time | Prints | Result | Note |
|---|---|---|---|---|---|
| 2128056326 | 06-20 15:44 | 00:02 17 | 012/012 | OK | |

Note   TMR: Timer TX, POL: Polling, ORG: Original Size, FME: Frame Erase TX,
       MIX: Mixed Original, CALL: Manual Communication, CSRC: CSRC, FWD: Forward,
       PC: PC-FAX, BND: Bind, SP: Special Original, FCODE: F-Code, MBX: Confidential,
       BUL: Bulletin

Result  OK: TX OK, S-OK: Stop Communication, PW-OFF: Power Switch OFF, TEL: RX from TEL,
        NG: Other Error, Cont: Continue, No Ans: No Answer, Refuse: Receipt Refused,
        Busy: Busy, M-Full: Memory Full.

DAVID A.P. BROWER
Brower@BrowerPiven.com

**BROWER PIVEN**
A PROFESSIONAL CORPORATION
488 MADISON AVENUE
EIGHTH FLOOR
NEW YORK, NEW YORK 10022
BrowerPiven.com
Telephone (212) 501-9000
Facsimile (212) 501-0300

*FACSIMILE COVER SHEET*

FROM: David A.P. Brower   DATE: 6/20/08

SUBJECT: *Landmen Partners, Inc., et al. v. The Blackstone Group, L.P., et al.,* 08-cv-03601-CM

Number of pages being transmitted including cover page: 12

PLEASE DELIVER TO:   Judge Colleen McMahon

FAX NUMBER:   (212) 805-6326

COMMENTS:   Letter In Further Support Of BX Investor Group's Motion To Be Appointed Lead Plaintiff

ORIGINAL TO FOLLOW BY MAIL:   YES   NO
ATTORNEY-CLIENT PRIVILEGED:   YES   NO
CONFIDENTIAL:   YES   NO

This message and accompanying pages (if any) are intended only for the use of the individual to whom or entity to which this is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us, immediately, by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

# BROWER PIVEN

DAVID A.P. BROWER
Brower@BrowerPiven.com

A PROFESSIONAL CORPORATION
488 MADISON AVENUE
EIGHTH FLOOR
NEW YORK, NEW YORK 10022
BrowerPiven.com
Telephone (212) 501-9000
Facsimile (212) 501-0300

## FACSIMILE COVER SHEET

FROM: David A.P. Brower                           DATE: 6/20/08

SUBJECT: *Landmen Partners, Inc., et al. v. The Blackstone Group, L.P., et al.*, 08-cv-03601-CM

Number of pages being transmitted including cover page: 12

PLEASE DELIVER TO:         Judge Colleen McMahon

FAX NUMBER:                (212) 805-6326

COMMENTS: Letter In Further Support Of BX Investor Group's Motion To Be Appointed Lead Plaintiff

ORIGINAL TO FOLLOW BY MAIL:          YES   NO
ATTORNEY-CLIENT PRIVILEGED:          YES   NO
CONFIDENTIAL:                        YES   NO

This message and accompanying pages (if any) are intended only for the use of the individual to whom or entity to which this is addressed and may contain information that is privileged, confidential and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient or the employee or agent responsible for delivering the message to the intended recipient, you are hereby notified that any dissemination, distribution or copying of this communication is strictly prohibited. If you have received this communication in error, please notify us, immediately, by telephone, and return the original message to us at the above address via the U.S. Postal Service. Thank you.

DAVID A.P. BROWER
Brower@BrowerPiven.com

**BROWER PIVEN**
A PROFESSIONAL CORPORATION
488 MADISON AVENUE
EIGHTH FLOOR
NEW YORK, NEW YORK 10022
BrowerPiven.com

Telephone (212) 501-9000
Facsimile  (212) 501-0300

June 20, 2008

**BY FACSIMILE**

Hon. Colleen McMahon
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St., Room 640
New York, New York 10007

Re:  *Landmen Partners, Inc., v. The Blackstone Group, L.P., et al.*, 1:08-cv-03601-CM
     *McAdam v. The Blackstone Group, L.P. et al.*, 1:08-cv-03838-CM
     *Jakeman v. The Blackstone Group L.P. et al.*, 1:08-cv-04064-CM
     *Galchutt. v. The Blackstone Group L.P. et al.*, 1:08-cv-04110-CM

Dear Judge McMahon:

We write on behalf of Max Poulter and Francis Brady, the two members of the lead plaintiff movant, BX Investor Group ("BX"), in support of their motion for appointment as lead plaintiff in the above-entitled actions (the "Actions"). As demonstrated below, based on any calculus, Mr. Poulter, individually, and BX, collectively, are the "person or group of persons that...has the largest financial interest in the relief sought...." 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). Messrs. Poulter and Brady, individually and collectively, also meet the typicality and adequacy requirements of Fed. R. Civ. P. 23 and, therefore, under the Private Securities litigation Reform Act of 1995 ("PSLRA"), they are the presumptive lead plaintiff.[1]

### Mr. Poulter and BX Have The Largest Financial Interest

"The PSLRA does not define the term 'largest financial interest' nor provide a method for

---

[1] It has become all too common for competing lead plaintiff movants to make speculative attacks on one another to gain leadership in PSLRA cases—typically only to the benefit of the defendants and, ultimately, to the detriment of the members of the proposed Class. We will refrain herein from that distasteful and, ultimately, counterproductive approach. Instead, this letter will not discuss the other movants or their potential weaknesses, but focus only on the fact that Messrs. Poulter and/or Brady should be appointed lead plaintiff because they satisfy the requirements to serve in that role under the express language of the PSLRA.

**BROWER PIVEN** A PROFESSIONAL CORPORATION
Page 2

determining which plaintiff has the largest financial interest in the relief sought by the class. Courts in the Second Circuit have developed a four-factor test focusing on: (1) the total number of shares purchased (or sold) during the class period; (2) the number of net shares purchased (or sold) during the class period (*i.e.*, the difference between the number of shares purchased (or sold) and the number of shares sold (or purchased)); (3) the total net funds expended during the class period (*i.e.*, the difference between the amount spent to purchase shares and the amount received for the sale of shares during the class period); and (4) the approximate loss suffered during the class period." *Vladimir v. Bioenvision, Inc.*, No. 07 Civ. 6416 (SHS)(AJP), 2007 U.S. Dist. LEXIS 93470, at *14-15 (S.D.N.Y. Dec. 21, 2007) (collecting cases). This Court has also applied these four factors to identify the presumptive lead plaintiff. *See Glauser v. EVCI Career Colls. Holding Corp.*, 236 F.R.D. 184, 187 (S.D.N.Y. 2006); *In re Veeco Instru., Inc. Sec. Litig.*, 233 F.R.D. 330, 332-33 (S.D.N.Y. 2005).

As the following charts demonstrate, under each of these four factors, Mr. Poulter (individually among the constituent movants) and BX (among all the movants collectively), have ***by far*** the "largest financial interest in the relief sought."

**FACTOR No. 1: Number Of Shares Purchased During The Class Period**

| Movant | Shares Purchased |
|---|---|
| **Max Poulter*** | 130,213 |
| Yixtn Tu** | 21,100 |
| Martin Litwin | 21,000 |
| Francis Brady* | 14,236 |
| Tsang Tak Keung** | 8,684 |
| Alice Tu** | 5,500 |
| David Jakeman** | 4,300 |
| Roderick and Linda Hernandez** | 1,000 |

| Group | Shares Purchased |
|---|---|
| **BX Investor Group** | 144,449 |
| Jakeman Group | 40,584 |
| Martin Litwin | 21,000 |

**FACTOR No. 2: Number Of Net Shares Purchased During The Class Period**

| Movant | Net Shares Purchased |
|---|---|
| **Max Poulter*** | 43,200 |
| Martin Litwin | 21,000 |
| Yixtn Tu** | 9,100 |
| Tsang Tak Keung** | 8,684 |
| Francis Brady* | 4,800 |
| David Jakeman** | 4,300 |
| Alice Tu** | 2,000 |
| Roderick and Linda Hernandez** | 1,000 |

| Group | Net Shares Purchased |
|---|---|
| **BX Investor Group** | 48,000 |
| Jakeman Group | 25,084 |
| Martin Litwin | 21,000 |

* "BX Investor Group"/ ** "Jakeman Group"

**BROWER PIVEN** A PROFESSIONAL CORPORATION
Page 3

### FACTOR No. 3: Total Net Funds Expended During The Class Period

| Movant | Net Funds Expended |
|---|---|
| **Max Poulter*** | **$1,120,522.38** |
| Martin Litwin | $651,000.00 |
| Yixtn Tu** | $286,033.00 |
| Tsang Tak Keung** | $274,327.56 |
| Francis Brady* | $207,685.93 |
| David Jakeman** | $122,385.28 |
| Alice Tu** | $90,945.00 |
| Roderick and Linda Hernandez** | $31,000.00 |

| Group | Net Funds Expended |
|---|---|
| **BX Investor Group** | **$1,328,208.31** |
| Jakeman Group | $804,690.84 |
| Martin Litwin | $651,000.00 |

### FACTOR No. 4: Approximate Losses
### (Based on Section 11(e) Statutory Measure of Damages)

| Movant | Loss |
|---|---|
| **Max Poulter*** | **$488,251.90** |
| Martin Litwin | $287,070.00 |
| Tsang Tak Keung** | $133,996.72 |
| Yixtn Tu** | $123,962.00 |
| Francis Brady* | $78,842.81 |
| Alice Tu** | $52,645.00 |
| David Jakeman** | $45,802.28 |
| Roderick and Linda Hernandez** | $13,190.00 |

| Group | Loss |
|---|---|
| **BX Investor Group** | **$567,094.71** |
| Jakeman Group | $369,596.00 |
| Martin Litwin | $287,070.00 |

### Mr. Poulter and Brady Have Claims That Are Typical of Those of the Class

The fourth factor, the estimated losses, is the factor courts have found to be the most important.[2] There can be no question Mr. Poulter, individually, and BX, collectively, satisfies that factor.[3]

---

[2] *See, e.g., Bhojwani v. Pistiolis,* No. 06 Civ. 13761, 2007 U.S. Dist. LEXIS 52139, at *23 (S.D.N.Y. June 26, 2007); *Kaplan v. Gelfond,* 240 F.R.D. 88, 93 (S.D.N.Y. 2007); *Weiss v. Friedman, Billings, Ramsey Group, Inc.,* No. 05-CV-04617(RJH), 2006 U.S. Dist. LEXIS 3028, at *13 (S.D.N.Y. Jan. 24, 2006) ("The amount of financial loss is the most significant of [the 4-factor test] elements.")(citations omitted).

[3] Although Mr. Poulter's PSLRA certification, *see Landmen Partners, Inc., et al. v. The Blackstone Group, L.P., et al.,* 1:08-cv-03601-CM. ("*Landmen*"), Dkt. No. 16, Ex. A, (unless specified otherwise, references to the docket shall be references to the docket in *Landmen*), which the statute requires list "all" transaction in Blackstone units, *see* 15 U.S.C. § 78u-4(a)(2)(A)(iv), indicates a large number of transactions on various days, in fact, the multiple transactions on the same days were based on single

**BROWER PIVEN** A PROFESSIONAL CORPORATION
Page 4

Unlike the difficulties often encountered in calculating an estimated loss in a case brought under Section 10(b) of the Securities Exchange Act of 1934 (the "1934 Act"), damages recoverable in a case, such as this, brought exclusively under the Securities Act of 1933 ("the "1933 Act"), are statutory and straightforward:

> The suit authorized under subsection (a) of this section may be to recover such damages as shall represent the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and (1) the value thereof as of the time such suit was brought, or (2) the price at which such security shall have been disposed of in the market before suit, or (3) the price at which such security shall have been disposed of after suit but before judgment if such damages shall be less than the damages representing the difference between the amount paid for the security (not exceeding the price at which the security was offered to the public) and the value thereof as of the time such suit was brought. . . .

15 U.S.C.§ 77(k)(e).

The foregoing "measure of damages" clearly provides that damages are recoverable for shares purchased at prices below the offering price which, by definition, includes shares issued pursuant to an initial public offering ("IPO"), but purchased in the post-offering aftermarket. Damages, however, are capped at the offering price.[4] The Second Circuit has definitively held that "aftermarket purchasers who can trace their shares to an allegedly misleading registration statement have standing to sue under *§ 11* of the 1933 Act." *DeMaria v. Andersen*, 318 F.3d 170, 178 (2d Cir. 2003). As Section 11(a) of the 1933 Act provides:

> [i]n case any part of the registration statement, when such part became effective, contained an untrue statement of a material fact or omitted to state a material fact required to be stated therein or necessary to make the statements therein not misleading, ***any person acquiring such security*** (unless it is proved that at the time of such acquisition he knew of such untruth or omission) may, either at law or in equity, in any court of competent jurisdiction, and sue [*inter alia*, the issuer and its officers].

---

large share orders placed by Mr. Poulter with his broker and the number of transactions reflect the manner in which his broker fulfilled those orders.

[4] Four individuals now before this Court purchased Blackstone units above the $31.00 IPO price. Based on actual purchase prices paid, Mr. Litwin's out-of-pocket losses (as distinguished from his damages recoverable under Section 11) increase from $287,070 to $401,520Dkt. No. 13, Ex. B Mr. Brady's losses increase from $78,842.81 to $124,532.33, Dkt. No. 16, Ex. B; Mr. Jakeman's losses increase by $1,210.71, Dkt. No. 9, Ex. C; and Mr. Keung's losses increase by $5,737.16. Dkt. No. 9, Ex. C. Even were these increased out-of-pocket losses used to determine financial interest, Mr. Poulter, individually, and BX, collectively, would continue to have the "largest financial interest."

**BROWER PIVEN** A PROFESSIONAL CORPORATION
Page 5

*See* 15 U.S.C.§ 77(k)(a) (emphasis added).

Thus, the 1933 Act has no requirement that a plaintiff purchase "on the offering." Therefore, Messrs. Poulter and Brady have claims that are both compensable and typical of all purchasers of Blackstone units during the Class Period.[5]

Moreover, there is no requirement that to recover damages under the 1933 Act the shares be held to the time the alleged misrepresentations and/or omissions are fully revealed. The damages formula under Section 11(e) expressly contemplates sales of the security before the allegedly false or misleading information is fully revealed. Indeed, the 1933 Act does not limit damages, as does the 1934 Act, to the difference between the purchase price and the mean trading price of the security during the ninety days beginning on "the date on which the information correcting the misstatement or omission that is the basis of the action is disseminated to the market." 15 U.S.C. § 78u-4(e)(1). *See also Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-46 (2005) (explaining that the loss in a 1934 Act case must be caused by a revelation of previously undisclosed material information). The 1933 Act also does not have a comparable loss causation requirement to state a claim. *Cf., In re Initial Pub. Offering Sec. Litig.*, 297 F. Supp. 2d 668, 669-70 (S.D.N.Y. 2003) (discussing loss causation requirement in the context of a securities fraud action brought under the fraud-on-the-market theory).

Instead, as an "affirmative defense," the defendants may seek to prove that a "portion or all of such ***damages*** represents other than the depreciation in value of such security resulting from such part of the registration statement, with respect to which their liability is asserted, not being true or omitting to state a material fact required to be stated therein or necessary to make the statements therein not misleading, such portion of or all such damages shall not be recoverable." 15 U.S.C. § 77(k)(e). This, however, is not the same as the separate element of loss causation in a 1934 Act case under *Dura* and the PSLRA, which requires a curative or partially curative disclosure followed by an immediate market price response. Rather, defendants must demonstrate the price of the security fell below the offering price for reasons unrelated to the statements in the registration statement. This is a far higher hurdle for a defendant in a 1933 Act case than the burden on a plaintiff to show loss causation in a 1934 Act case. *See also DeMarco v. Lehman Bros., Inc.*, 309 F. Supp. 2d 631, 634 (S.D.N.Y. 2004)(truth-on-the-market a question for the jury); *In re Globalstar Sec. Litig.*, No. 01 Civ. 1748 (SHS), 2003 U.S. Dist. LEXIS 22496, at *28-29 (S.D.N.Y. Dec. 15, 2003) ("[t]he question of whether, and when, the market had received enough information to counteract the allegedly misleading statements is best resolved on a summary motion or at trial," not on a motion to dismiss.); *In re Vivendi Universal, S.A. Sec. Litig.*, No. 02 Civ. 5571 (HB), 2003 U.S. Dist. LEXIS 19431, at *60-62 (S.D.N.Y. Nov. 4, 2003) (defendants cannot meet the burden of establishing a "truth on the market" defense on a motion to dismiss.). Moreover, as an affirmative defense, this issue goes to the merits of the case, and is certainly premature at this juncture. *See, e.g., In re Deutsche Telekom AG Sec. Litig.*, 229 F. Supp. 2d 277, 284 (S.D.N.Y. 2002) ("the class certification stage of the litigation is an

---

[5] Here, this fact cannot be in dispute. Mr. Litwin, as well as four of the five members of the Jakeman Group, like Messrs. Poulter and Brady, also purchased all of their Blackstone units in the aftermarket at prices either above or below the offering price. *See* Dkt. No.13, Ex. B; Dkt. No. 9, Ex. C.

inappropriate time to inquire into the merits of plaintiffs' claims and, by extension, defendants' affirmative defenses") (citation omitted).

Thus, unlike in *Veeco*, a 1934 Act case in which this Court determined that lead plaintiff movant the Decatur Plan, who had sold *all of its shares* before the fraud was revealed at the end of the class period, faced dismissal of its entire claim due to its potential inability to satisfy the loss causation element of its claim under *Dura* (and consequently risked the suit itself), here, since loss causation is not an element of a 1933 Act claim, in-and-out transactions during the Class Period do not provide defendants with a basis to challenge any Class member's claim. Instead, defendants in a 1933 Act case may only attempt, at the appropriate time, to seek to reduce the *amount* of each Class member's individual damages. Disputes concerning the amount of individual class member's damages do not constitute a unique defense or predominate in a securities law action. *See, e.g., In re WorldCom, Inc. Sec. Litig.*, 219 F.R.D. 267, 303 (S.D.N.Y. 2003) ("When liability can be determined on a class-wide basis, individualized damage issues are not ordinarily a bar to class certification.") (citing *In re Visa Check/MasterMoney Antitrust Litig.*, 280 F.3d 124, 141 (2d Cir. 2001)). In fact, as courts have noted, "[i]ndividual questions of damages are *typical* in class actions." *DeLoach v. Philip Morris Cos.*, 206 F.R.D. 551, 566 (M.D.N.C. 2002) (emphasis added).[6] Thus, Messrs. Poulter and Brady, who both held Blackstone units at the end of the Class Period, see Dkt. No.16, Ex. B (loss charts), are not subject to any unique defense based on their sales during the Class Period.

Indeed, sales of Blackstone units by Class members during the Class Period will be typical given the theory of the case espoused in the complaints in this Action filed by, among others, Mr. Litwin's and the Jakeman Group's counsel. For instance, in the complaint in *Landmen*, filed by the Coughlin Stoia firm, counsel to Mr. Litwin, the plaintiff alleges that "[i]n *the months after the IPO*, details of the problems with some of Blackstone's portfolio companies *slowly began to become known to the market and the price of Blackstone stock substantially declined*." See Dkt. No. 1, at ¶ 31 (emphasis added). Since the law firms representing the other movants have already alleged that the decline in the price of Blackstone units after the IPO was due to the market slowly learning the truth, neither Mr. Litwin nor the Jakeman Group can argue that losses on sales during the Class Period were not attributable to "depreciation in value … resulting from … the registration statement," under the 1933 Act. In-and-out investors have been routinely appointed lead plaintiffs in actions, like this one, involving alleged partial disclosures. *See, e.g., Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. LaBranche & Co.*, 229 F.R.D. 395, 415 (S.D.N.Y. 2004); *Weiss*, 2006 U.S. Dist. LEXIS 3028, at *14-16; *Montoya v. Mamma.com Inc.*, No. 05 Civ. 2313 (HB), 2005 U.S. Dist. LEXIS 10224, at *7-8 (S.D.N.Y. May 31, 2005) (appointing an in-and-out purchaser as lead plaintiff; "at least at this stage, 'in and out

---

[6] *See also Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) ("[D]ifferences in the amount of damages between the class representatives and the other Class members does not affect typicality"); *Blackie v. Barrack*, 524 F.2d 891, 905 (9th Cir. 1975); *In re In re Indep. Energy Holdings PLC, Sec. Litig.*, 210 F.R.D. 476, 486 (S.D.N.Y. 2002); *Dreyfus Aggressive Growth Mut. Fund Litig.*, No. 98 Civ. 4318 (HB), 2000 U.S. Dist. LEXIS 13469, at *32 (S.D.N.Y. Sept. 19, 2000); *In re NASDAQ Mkt.-Makers Antitrust Litig.*, 169 F.R.D. 493, 523-24 (S.D.N.Y. 1996) (same) (collecting cases); *In re ICN/Viratek Sec. Litig.*, No. 87 Civ. 4296, 1996 U.S. Dist. LEXIS 4407, at *28-29 (S.D.N.Y. Apr. 4, 1996); *In re AM Int'l, Inc. Sec. Litig.*, 108 F.R.D. 190, 192-93 (S.D.N.Y. 1985).

**BROWER PIVEN** A PROFESSIONAL CORPORATION
Page 7

purchasers' do not appear to be 'unique' and, thus, 'render such plaintiff incapable of adequately representing the class'").

The evidence supporting the fact that "the problems with some of Blackstone's portfolio companies slowly began to become known to the market" during the Class Period -- and, therefore, that ins-and-outs have claims that are typical of holders in this Action -- is also compelled by the price movement of Blackstone units before the March 10, 2008 end of the Class Period. As the chart below shows, the price of Blackstone units steadily declined until reaching its low on March 7, 2008, three days before the end of the Class Period. Therefore, the evidence that partially curative information "leak[ed] out" to the market before the end of the Class Period on March 10, 2008. *See Dura,* 544 U.S. at 342.



Given the decline in Blackstone units before the alleged final, fully curative release on March 10, 2008, a large segment of the proposed Class will have sold their Blackstone units before that date. Thus, when, or if, defendants seek to argue their affirmative defense that the units declined for reasons unrelated to misrepresentations or omissions in the registration statement, that defense will hardly be unique to Messrs. Poulter or Brady, but rather will be asserted against a large segment of the proposed Class. Therefore, here "a plaintiff who has acquired and retained securities can thoroughly and adequately represent parties who purchased securities and then sold them, and *vice versa.* The determination of when a plaintiff sold her or his stock essentially relates to the issue of damages." Newberg on Class Actions § 22.32 at p. 22-137 to 22-140 (Third Edition, 1995).[7] There are simply no conflicts here between Class members who

---

[7] The following cases certifying classes which include both ins-and-outs and holders: *see, e.g., Blackie,* 524 F.2d at 909 n. 25; *In re Oxford Health Plans, Inc. Sec. Litig.,* 199 F.R.D. 119, 124 (S.D.N.Y. 2001); *In re Sys. Software Assocs., Sec. Litig.,* No. 97 C 177, 2000 U.S. Dist. LEXIS 18285, at *6-8 (N.D. Ill. Dec. 6, 2000); *In re Gaming Lottery Sec. Litig.,* 58 F. Supp. 2d 62, 69-71 (S.D.N.Y. 1999); *In re*

**BROWER PIVEN** A PROFESSIONAL CORPORATION
Page 8

purchased and held their units to the end of the Class Period and those who sold during the Class Period. *See, e.g., In re In re Oxford Health Plans, Inc. Sec. Litig.*, 191 F.R.D. 369, 377-78 (S.D.N.Y. 2000).

### Messrs. Poulter and Brady Will Adequately Represent the Class

BX is a prototypical *"group of persons"* with "the largest financial interest in the relief sought…" under the PSLRA. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I)(bb). *See e.g., In re Espeed, Inc. Sec. Litig.*, 232 F.R.D. 95, 99 (S.D.N.Y. 2005) (the "majority view" is that "unrelated investors may aggregate"); *In re Donnkenny Inc. Sec. Litig.*, 171 F.R.D. 156, 158 (S.D.N.Y. 1997) (person or group of persons with largest collective financial interest are presumptive lead plaintiffs). First, both members of BX – Messrs. Poulter and Brady – have substantial individual losses. Second, BX satisfies the most stringent requirements for a "group" to act as lead plaintiff that the courts have developed. They have presented evidence "that the members of the group will act collectively and separately from their lawyers." *In re Tarragon Corp. Sec. Litig.*, No. 07 Civ. 07972 (PKC), 2007 U.S. Dist. LEXIS 91418 (S.D.N.Y. Dec. 6, 2007) ("there must be some evidence that the members of the group will act collectively and separately from their lawyers.") (citing *Weltz v. Lee*, 199 F.R.D. 129, 132-33 (S.D.N.Y. 2001)). Here, Messrs. Poulter and Brady have provided both sworn PSLRA certifications and individual declarations, *see* Dkt. No. 16, Exs. A, C, that *evidence*: their backgrounds; their investment experience; that they can act as a cohesive group; that they conferred with each other *prior* to the filing of their lead plaintiff motion and have agreed to prosecute this Action together; their intention to regularly consult with each other regarding the prosecution of this litigation; their mechanism to share information; how they will manage the litigation together; how decisions will be made and executed including in an emergency situation; and how counsel will be managed.[8] *See, e.g., Reimer v. Ambac Fin. Group, Inc.*, No. 08 Civ. 411 (NRB), 2008 U.S. Dist. LEXIS 38729, *10 (S.D.N.Y. May 9, 2008); *Bhojwani v. Pistiolis*, No. 06 Civ. 13761 (CM)(KNF), 2007 U.S. Dist. LEXIS 96246, *10-11 (S.D.N.Y. July 30, 2007). This evidence provides the Court with a clear

---

*NASDAQ*, 169 F.R.D. at 514; *In re Arakis Energy Corp. Sec. Litig.*, No. 95-CV-3431 (ARR), 1999 U.S. Dist. LEXIS 22246, at *34 (E.D.N.Y. Apr. 30, 1999); *Nathan Gordon Trust v. Northgate Exploration, Ltd.*, 148 F.R.D. 105, 108 (S.D.N.Y. 1993).

[8] The respective declarations of Messrs. Poulter and Brady also demonstrate that each of them, after performing due diligence on the background and experience of counsel, selected Brower Piven. Dkt. No. 16, Ex. C, ¶ 4. Each describes their conversations during which they established procedures to "provide for efficient prosecution of the action." *See In re Gemstar-Tv Guide Int'l Secs. Litig.*, 209 F.R.D. 447, 451 (C.D. Cal. 2002) (citation omitted). Each has stated that they understand their "fiduciary duties and obligations" to "fairly and adequately represent the Class by vigorously prosecuting the case…." Dkt. No. 16, Ex. C, ¶ 5. In fulfilling those obligations, they each "intend to oversee [their] counsel and monitor the progress of the litigation with the other. *Id.* at ¶ 6. Moreover, each intends, *inter alia*, to review pleadings and motions papers; obtain periodic status reports on the progress of the litigation on developments in the action; produce documents, answer interrogatories, and/or sit for depositions; have input into litigation decisions and strategies; and involvement in the final approval of any major litigation decisions, including whether or not to settle the litigation and if so, for how much. *See id.*, at ¶ 6. Thus, both members of BX have shown that they can effectively and efficiently prosecute this Action together. *See id.*, at ¶¶ 7-8. *Cf. In re Gemstar*, 209 F.R.D. at 451.

**BROWER PIVEN** A PROFESSIONAL CORPORATION
Page 9

basis to entrust the litigation of this Action to Messrs. Poulter and Brady, and to conclude that they constitute a proper "group" as that term is intended under the PSLRA. *See, e.g., Local 144 Nursing Home Pension Fund v. Honeywell Int'l, Inc.*, No. 00-3605 (DRD), 2000 U.S. Dist. LEXIS 16712, at *13-14 (D.N.J. Nov. 16, 2000); *In re Versata, Inc. Sec. Litig.*, No. C 01-1439 SI, 2001 U.S. Dist. LEXIS 24270, at *19-21 (N.D. Cal. Aug. 20, 2001) (citing *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1026 (N.D. Cal. 1999)).

Furthermore, if the Court is not inclined to appoint the BX "group," "the Court can consider whether any of its individual members is the most adequate plaintiff." *In re Oca, Inc. Sec. Litig.*, No. 05-2165, Order and Reasons, at *21 (E.D. La. Nov. 18, 2005) (citations omitted) Oca Dkt. No.157. BX member, Max Poulter, who, individually among all movants, has the largest financial interest and clearly satisfies the requirements of the PSLRA, as lead plaintiff. *See, e.g., In re Oxford*, 182 F.R.D. at 46 (S.D.N.Y. 1998) (selecting the members of larger proposed group with the largest losses to serve as lead plaintiff). *See also Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 412 n. 12 (D. Minn. 1998) (same). As the court in *In re Cardinal Heath Sec. Litig.*, 226 F.R.D. 298 (S.D. Ohio 2005), explained, "[a] group vying for lead plaintiff status does not necessarily rise and fall as a group. Segmentation is a viable remedy and finds support in the case law. *Id.* at 308 (citing *In re Surebeam Corp. Sec. Litig.*, No. 03 CV 1721, 2003 U.S. Dist. LEXIS 25022, at *23 (S.D. Cal. Jan. 5, 2004). In *Surebeam*, the court found it had the authority to "break apart a proposed group in search of the most adequate lead plaintiff." 2003 U.S. Dist. LEXIS 25022, at *23 (excluding a member of the presumptive lead plaintiff group and appointing its remaining members as lead plaintiff).[9] Here, Mr. Poulter has larger financial losses, individually, than any of the other individual or group movants, and he previously indicated, in the alternative, his willingness, if the court preferred, to serve alone as lead plaintiff. *See* Poulter Plaintiff's Certification, Dkt. 16, Ex. A, at ¶ 3.

### Presumption In Favor Of Messrs. Poulter And Brady Cannot Be Rebutted

Based on the undisputed fact that Mr. Poulter (individually among the constituent movants) and BX (among all the movants collectively), overwhelmingly have the "largest financial interest in the relief sought," and otherwise meet the requirements of Fed. R. Civ. P. 23, BX is the presumptive lead plaintiff. 15 U.S.C. § 77z-1(a)(3)(B)(iii)(I). To rebut this presumption, competing movants must provide *proof* that Messrs. Poulter and/or Brady will not fairly and adequately protect the interests of the class or is subject to unique defenses that render such plaintiff incapable of adequately representing the class. *See* 15 U.S.C. § 77z-1(a)(3)(B)(iii)(II). Competing movants assailing the adequacy of a presumptive lead plaintiff must do so with *proof, not speculation. See Sofran v. LaBranche & Co.*, 220 F.R.D. 398, 402, 403-04 (S.D.N.Y. 2004) (rejecting attempts to rebut lead plaintiff presumption where opponent provided "no evidence of any antagonism" or "proof" that the lead plaintiff was atypical or inadequate, holding that

---

[9] *See also Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 505 (S.D. Fla. 2002) (one "group" member's inadequacy does not bar appointment of the remaining "group" members to serve as lead plaintiff); *In re Razorfish, Inc. Sec. Litig.*, 143 F. Supp. 2d 304, 311 (S.D.N.Y. 2001) (court selected one member of a proposed "group" to serve as sole lead plaintiff); *Netsky v. Capstead Mortgage Corp.*, No. 3:98-CV-1716-L, 2000 U.S. Dist. LEXIS 9941, at *27 (N.D. Tex. July 12, 2000) (granting alternative request of lead plaintiff movant group to appoint a smaller number of group members as lead plaintiff).

**BROWER PIVEN** A PROFESSIONAL CORPORATION
Page 10

"[w]ithout such proof, the citations to other cases provides only speculation as to such a possibility.").[10] As set forth in the BX Investor Group Lead Plaintiff Memorandum, Dkt. No. 15, at 11-12, Messrs. Poulter and Brady will fairly and adequately protect the interests of the Class and are subject to no unique defenses that render either of them incapable of adequately representing the class. As neither Mr. Litwin nor the Jakeman Group can offer *proof* to the contrary, either Mr. Poulter or BX, as the Court determines is more appropriate, should be appointed lead plaintiff. *See, e.g., Glauser,* 236 F.R.D. at 187 ("in the absence of any 'proof'" to rebut the presumption in favor of the movant with the largest losses, the challenge failed).[11]

### Mr. Poulter's and Mr. Brady's Choice of Counsel Should be Approved

Brower Piven is highly experienced class counsel, and has been appointed as lead or co-lead counsel in numerous federal securities and derivative litigations around the country, including in this District. *See* Dkt. No. 16, Ex. E (Brower Piven firm resume). Moreover, a lead plaintiff's selection of lead counsel should only be disturbed if the choice is "so irrational ... as to cast genuine and serious doubt on that plaintiff's ... ability to perform the functions of lead plaintiff," *In re Cavanaugh,* 306 F.3d 726, 732-733 (9th Cir. 2002), or "so deficient as to demonstrate that it will not fairly and adequately represent the interests of the class, thus disqualifying it from serving as lead plaintiff at all." *In re Cendant Corp. Litig.,* 264 F.3d 201, 266 (3d Cir. 2001). Thus, the selection of class counsel is "not a beauty contest" and "the district court has no authority to select for the class what it considers to be the best possible lawyer. . . Indeed, the district court does not select class counsel at all." *In re Cavanaugh,* 306 F.3d at 732-733 (citing *In re Cendant,* 264 F.3d at 266). Rather, "one of a lead plaintiff's most important functions is to

---

[10] *See also In re Enron Corp. Sec. Litig.,* 206 F.R.D. 427, 448 n.18 (S.D. Tex. 2002) (alleged "unsupported" or "generic" claims cannot rebut the most adequate plaintiff presumption under the PSLRA); *In re Fannie Mae Sec. Litig.,* 355 F. Supp. 2d 261, 263 (D.D.C. 2005) (rejecting as "speculative and hypothetical" claims regarding potential conflicts between the presumptive lead plaintiff and the class where movants "offer no proof" how such potential conflicts might affect the presumptive lead plaintiff's "capacity to fairly and adequately represent the class").

[11] Indeed, in the absence of "proof" that a presumptive lead plaintiff is atypical or inadequate to represent the class, courts have refused to accept legally irrelevant and premature arguments such as that an individual movant is less appropriate than an institutional movant, *see, e.g., Mohanty v. Bigband Networks, Inc.,* No. 07-5101 BA, 2008 U.S. Dist. LEXIS 32764, **17-18 (N.D. Cal. Feb. 13, 2008) ("plaintiff's mere status as an institutional investor does not provide any presumption that the institutional plaintiff is a more adequate lead plaintiff than an individual investor with a larger interest."); that a movant came to counsel through an internet or press notice about the existence of the case, *see, e.g., In re Jones Soda Co. Sec. Litig.,* No. C 07-1366 RSL, 2008 U.S. Dist. LEXIS 14884, *5 (W.D. Wash. Feb. 12, 2008) (finding that solicitation through non-PSLRA mandated press releases are not unusual in securities class actions); *In re Lernout & Hauspie Sec. Litig.,* 138 F. Supp. 2d 39, 43 (D. Mass. 2001)(finding a purpose of the PSLRA was to provide class members with greater information and options, and expressly not to limit those options to those firms which have already filed complaints); or that a movant engaged in an unusual trading pattern. *See, e.g., In re Host Am. Corp. Sec. Litig.,* 236 F.R.D. 102, 108 (D. Conn. 2006) (rejecting arguments that day trader was atypical of class members). Such non-statutory arguments simply do not suffice to rebut the statutory presumption in favor the movant with the largest financial interest.

**BROWER PIVEN** A PROFESSIONAL CORPORATION
Page 11

'select and retain' lead counsel. . ." *In re Cendant,* 264 F.3d at 265-266. Here, Messrs. Poulter and Brady have retained a firm whose attorneys have over twenty five years experience prosecuting federal securities class actions who are well-qualified to serve as class counsel in this action.

### Conclusion

For all of the foregoing reasons, BX members, Messrs. Poulter and Brady respectfully requests that this Court: (1) appoint BX or Mr. Poulter to serve as lead plaintiff in this action and deny the competing motions; (2) approve the selection of Brower Piven as lead counsel for the Class; and (3) grant such other and further relief as the Court may deem just and proper.

Respectfully submitted,

David A.P. Brower

cc: All Counsel of Record (via email)